# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 02-6024SI

_____

| | | |
|---|---|---|
| In re: Dennis Harker | * | |
| | * | |
| Debtor | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Dennis Harker | * | Southern District of Iowa |
| | * | |
| Plaintiff-Appellant | * | |
| | * | |
| v. | * | |
| | * | |
| United States of America | * | |
| | * | |
| Defendant-Appellee | * | |

_____

Submitted: October 31, 2002
Filed: December 5, 2002

_____

Before KOGER, Chief Judge, DREHER, and FEDERMAN, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

Plaintiff-Appellant Dennis Harker appeals from a decision of the bankruptcy court on an order of remand to determine the amount of his tax liability.[1] We affirm.

## BACKGROUND

In 1989, the Internal Revenue Service (the IRS) brought criminal charges against Harker and his then-wife, Mary Harker, for tax evasion. As a result of those charges, Harker

_____

[1]The Honorable Russell J. Hill, United States Bankruptcy Judge for the Southern District of Iowa.

pled guilty to income tax evasion for the tax year 1987, and Mary Harker pled guilty to income tax evasion for 1985. Thereafter, Harker and Mary Harker paid more than $245,000.00 for the 1987 taxes and interest. On October 11, 1991, the United States Attorney filed a satisfaction of judgment with the clerk of the United States District Court for the Southern District of Iowa, which indicated Harker had made full restitution for the 1987 taxes.

Due to their fraud and substantial underpayment, however, the IRS determined that the Harkers were liable for income tax deficiencies and statutory additions to tax for 1985 through 1987, and so notified them. After receiving that notice, Harker filed a petition with the United States Tax Court (the Tax Court). On December 1, 1994, the Tax Court found that Harker had committed fraud, substantially understated his income, and actively evaded federal income tax in years 1985 through 1987. The Tax Court then found deficiencies of income tax due as follows: $17,080.00 for 1985, $135,662.00 for 1986, and $0 for 1987. Harker unsuccessfully appealed the decision of the Tax Court to the Court of Appeals for the Eighth Circuit, but he raised only procedural issues and did not challenge the merits of the Tax Court's ruling as to the amount of taxes owed for the years in question.

Two weeks after the Tax Court decision, on May 16, 1995, Harker filed a Chapter 13 petition with the United States Bankruptcy Court for the Southern District of Iowa. On June 14, 1996, the bankruptcy court dismissed the petition as a bad faith filing, and found that Harker filed it "as a litigation tactic to avoid posting an appeal bond that would have been required to postpone assessment by the IRS" pending appeal of the Tax Court decision. Characterizing Harker's tax deficiencies as "potentially nondischargeable in a Chapter 7" proceeding, the court concluded that "using Chapter 13 in such a manner is inconsistent with the spirit of the Bankruptcy Code and with the fundamental goal to reorganize debts." The Order permitted Harker to convert his case to a Chapter 7 proceeding before the dismissal became final 20 days later, and further provided that the automatic stay would remain in effect until the conclusion of the 20-day grace period. Harker failed to convert his case. As a result, the automatic stay terminated on July 5, 1996.

2

Thereafter, on July 12, 1996, the IRS recorded tax liens in the amount of $1,073,298.20 with the Polk County, Missouri Recorder and the Boone County, Missouri Recorder. Harker then moved the bankruptcy court for the following: (1) to reimpose the automatic stay; (2) for a stay pending appeal of the order of dismissal; (3) for an order compelling the IRS to cease and desist from further collection activity; (4) for an order requiring the IRS to remove tax liens; and (5) for a holding that the tax liens were void *ab initio*. On August 20, 1996, the bankruptcy court denied this motion, finding that the automatic stay terminated 20 days after the June 14, 1996 dismissal order, therefore, the IRS did not violate the automatic stay when it filed its liens and its notice of intent to levy on July 12, 1996. Further, the bankruptcy court refused to grant Harker a stay pending his appeal, holding that the tax claim "has been pending since May 1, 1995 and [Harker] has not shown a reasonable likelihood of success on the merits of his appeal sufficient to warrant an entry of a stay."

On August 26, 1996, the district court partially granted Harker's motion for stay pending appeal, and ordered the United States to "not take final action affecting title on property prior to this court's final ruling on the merits." On September 6, 1996, the district court denied Harker's appeal.

On June 12, 1997, in order to collect on Harker's 1985-1987 tax liabilities, the IRS levied on a 145.84-acre farm he owned in Boone County, Iowa and a dwelling he owned in West Des Moines, Iowa, and scheduled public auctions for September 9 and 10, 1997. On September 8, 1997, the day before the auction, Harker filed this Chapter 7 bankruptcy petition; on September 23, 1997, he commenced this adversary proceeding seeking to discharge his tax debt for 1985-1987. On November 4, 1997, the Chapter 7 trustee filed reports of abandonment and no assets.

The United States moved for relief from the automatic stay to sell the seized real estate. Following the hearing on the motion, the court entered an order terminating the stay to permit the United States to sell both properties after finding that the federal tax liens that encumbered the properties exceeded their value. In offering the Boone County real estate for sale at public auction, the United States described it as a "136-acre farm." Both properties

3

were sold in August 1998, and the United States realized a total of $285,000.00 from the sales, which it applied to Harker's fraud penalties. On October 27, 1998, Harker received a Chapter 7 discharge.

On April 27, 1998, the bankruptcy court entered summary judgment in Harker's favor, finding that the United States had failed to prove that his 1985 and 1986 tax obligations were excepted from discharge under 11 U.S.C. § 523(a)(1)(C). The Court further found that the penalties and interest on penalties for 1985 through 1987 were also dischargeable because they arose from events occurring more than three years before his petition. The court agreed with the United States that due to Harker's criminal conviction for tax evasion, any liability for taxes for 1987 would be nondischargeable, but found no taxes due for that year.

The United States appealed to the district court, which affirmed that the penalties and interest on penalties were dischargeable, but reversed the bankruptcy court's decision that tax and interest on tax for 1985 and 1986 were also dischargeable. Because the Tax Court had found that Harker committed fraud and substantially understated income for 1985 through 1987, the district court held that he was collaterally estopped from arguing that the tax and interest were not excepted from discharge under 11 U.S.C. § 523(a)(1)(C). The district court remanded the case to the bankruptcy court for a "determination of Harker's nondischargeable taxes and interest" for 1985 through 1987.

On June 12, 2000, the bankruptcy court held the remand hearing, and on April 30, 2001, it reopened the record to take the testimony of IRS Revenue Officer Howard L. Hoy. The United States submitted the Tax Court decision in *Harker v. Commissioner,* the IRS's certified tax assessments, and Hoy's calculations of the outstanding debt, less all credits, and the dischargeable penalties and interest on penalties. Harker argued that he had no tax liability because the United States did not prove he owed anything, and it did not properly credit his payments. He attacked the sale of his real estate and asked for an equitable discharge of his tax debt.

The bankruptcy court determined, however, that the United States had presented *prima facie* evidence of Harker's tax liability through the certified tax assessments, and

4

Harker failed to disprove this evidence. With regard to additional payments Harker claimed to have made, the court found that any payments made, and their application, prior to May 1, 1995, were considered by the Tax Court and included in its calculation. Addressing Harker's arguments about the sale of this seized real estate, the bankruptcy court found that because it had lifted the stay to permit the United States to proceed *in rem* with the sale and the trustee did not object, the sale was not conducted under the court's supervision and had no effect on the property of the estate. Noting that Harker's other arguments were "without merit," the court denied his request for an equitable discharge from all remaining tax liability because "he is not a sympathetic debtor, and equity does not balance in his favor for the request relief."

On April 15, 2002, the bankruptcy court entered its order finding Harker's tax liabilities, as of April 30, 2001, to be as follows:

(1) $76,819.54 for the year 1985. "Said amount is comprised of $17,462.58 tax deficiency, collection costs, and lien fees, and $59,356.96 of accrued interest."

(2) $532,761.96 for the year 1986. "Said amount is comprised of $135,622.00 of tax deficiency, and $397,139.96 of accrued interest."

(3 $0.00 for the year 1987. "Debtor has paid the required taxes and interest and no balance is outstanding."

On April 26, 2002, Harker filed a timely appeal from the Bankruptcy Court's Order.

STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge

5

the credibility of the witnesses.[2] We review the legal conclusions of the bankruptcy court *de novo.*

## DISCUSSION

Harker, in essence, raised six issues at the bankruptcy court hearing on remand. The bankruptcy court considered the arguments and summarily dismissed three of them. Harker raises those same six issues on appeal. He argues that the IRS did not properly apply voluntary payments he made prior to May 1, 1995, that the IRS inaccurately calculated the interest due on the 1985 and 1986 tax deficiencies, and that the IRS improperly applied the involuntary payments derived from the sale of his homestead and farm to dischargeable debt. He then argues that the IRS violated the automatic stay when it filed its tax liens, that the transfer of the sales proceeds from the farm and homestead was preferential and should be avoided, and that the IRS acted inequitably by applying involuntary payments to dischargeable penalties and by improperly accounting for other payments. The first three arguments are within the scope of the order of remand, as they directly influence the calculation of taxes and interest due. We find, however, that we have no jurisdiction to address the remaining arguments. The district court remanded solely for a determination of Harker's tax liability, including the interest that has accrued on those taxes, and the proper credit to be given for payments received by the IRS. The bankruptcy court's scope of review was limited by the order of remand.[3] Our review of the bankruptcy court's determination, based upon that order of remand, is limited as well. We, therefore, find that Harker's claims that the IRS violated the automatic stay when it filed its tax liens, that the transfer of the sales

---

[2]*Gourley v. Usery (In re Usery)*, 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir.1997)); Fed. R. Bankr. P. 8013.

[3]*Omaha Indian Tribe v. Jackson*, 854 F.2d 1089, 1094 (8th Cir. 1988) *Citing Adamian v. Lombardi*, 608 F.2d 1224, 1228 (9th Cir. 1979). *See also Thornton v. Carter*, 109 F.2d 316, 320 (8th Cir. 1940) (holding that once a mandate issues from the reviewing court to the court below, a second appeal brings up nothing for review but the proceedings subsequent to the mandate).

proceeds from the farm and homestead was preferential, and that the IRS acted inequitably raise collateral issues outside the scope of the order of remand and cannot be considered here.

We will address the remaining arguments in turn.

### 1. Application of Payments Prior to May 1, 1995

The bankruptcy court found that the amount of tax due for 1985 and 1986 had previously been determined by the Tax Court, and that in making that determination, the Tax Court necessarily considered payments that had been made prior to the date of its decision. We agree. The bankruptcy court properly declined to revise the Tax Court's calculation. As the district court held, Harker is collaterally estopped from relitigating the Tax Court's decision. Further, because the Tax Court decided Harker's tax liability before he filed his case, the bankruptcy court lacked jurisdiction to revisit his May 1, 1995 tax liability. Section 505 (a)(2) of the Bankruptcy Code (the Code) precludes a bankruptcy court from determining tax "if such amount . . . was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement" of the bankruptcy case.[4] We, therefore, find no error in the bankruptcy court's determination that it was estopped from considering the application of any payments made prior to May 1, 1995.

### 2. Application of Proceeds to Dischargeable Penalties

The IRS applied all of the sales proceeds to the penalties due and owing as a result of the 1987 tax deficiency, which are a dischargeable debt. For obvious reasons, Harker would prefer that the IRS had applied the proceeds against the obligations that are nondischargeable.

---

[4]11 U.S.C. § 505 (a)(2). *See Allison v. United States*, (*In re Allison*), 232 B.R. 195, 202 (Bankr. D. Mont. 1998) *judgment vacated on other grounds*, 238 F.3d 427 (9th Cir. Mont. 2000) (Table) (citing *Hammers v. Internal Revenue Service*, (*In re Hammers*), 988 F.2d 32 (5th Cir. 1993)) (stating that "[c]learly, this Court had no jurisdiction to try the determination of the 1988 tax year assessment since that deficiency has been fully adjudicated pre-petition by the Tax Court") .

The funds that the IRS obtained, however, from the seizure and sale of the farm and homestead represented an involuntary payment of a tax liability. As such, the government was free to apply the levied proceeds to the fraud penalties. A taxpayer may direct the application of a voluntary tax payment to the government, but the government directs the allocation of an involuntary payment.[5] The properly-filed federal income tax liens secured the government's claim for penalties, regardless of Harker's subsequent discharge in bankruptcy. The discharge extinguished only his personal liability for the penalties, and interest on the penalties.[6] In *Isom v. United States,*[7] after the debtors obtained a discharge of their tax liability in their Chapter 7 bankruptcy case, they argued that based on this discharge the IRS should release the tax lien.[8] In rejecting this argument, the court held that "liability for the amount assessed remains legally enforceable even where the underlying tax debt is discharged in the bankruptcy proceeding."[9] The court found that, while the discharge precluded the IRS from collecting the debt as a personal liability of the debtors, "their property remains liable for a debt secured by . . . a valid tax lien."[10] Therefore, despite the fact that Harker obtained a discharge of his personal liability for fraud penalties, the involuntary lien included the fraud penalties. The government was, thus, free to sell the

---

[5]*See Jehan-Das, Inc. v. United States (In re Jehan-Das, Inc.),* 925 F.2d 237, 238 (8th Cir. 1991), *cert. denied,* 502 U.S. 810 , 112 S. Ct. 55 , 116 L. Ed. 2d 32
(1991) ( holding that, if a payment is voluntary, the taxpayer can decide which of his tax liabilities to pay; otherwise the IRS directs the application of the payment); *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir. 1983) (accepting the IRS policy to allocate involuntary payments as it sees fit as a "sensible tax policy").

[6]*See* 11 U.S.C. § 524(a)(1) (providing that a discharge "voids any judgment. . . to the extent that such judgment is a determination of the personal liability of the debtor") (emphasis added); *See Johnson v. Home State Bank*, 501 U.S. 78, 82-83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66 (1991) (finding that a Chapter 7 "discharge extinguishes *only* 'the personal liability of the debtor.'") (emphasis in the original) (citations omitted).

[7]901 F.2d 744 (9th Cir. 1990).

[8]*Id.* at 745.

[9]*Id.*

[10]*Id.*

property to which the lien attached, and to apply the proceeds from that sale to reduce any dischargeable obligations secured by the lien.

### 3. Calculation of Interest on Tax Deficiency

The final issue relates to interest charged on the tax liability as determined by the Tax Court. The Tax Court found that Harker's tax deficiency was $17,080.00 for 1985, $135,622.00 for 1986, and zero for 1987. The bankruptcy court and the district court accepted this calculation. We, therefore, begin with a finding that that is the amount of the tax deficiency. Both the bankruptcy court and the district court found that the tax deficiency and the interest thereon are nondischargeable, and that any penalties or additions to tax, and the interest thereon, are dischargeable. This leaves for our consideration the arguments Harker makes as to the bankruptcy court's calculation of interest on the three years of tax deficiency in question.

Harker first argues that no interest should be allowed, because the Tax Court decision did not provide for interest. The district court, however, remanded to the bankruptcy court for a calculation of interest due. In so doing, the district court implicitly rejected this argument.

In any event, section 6601 of the Internal Revenue Code (the IRC) provides for interest on tax deficiencies from the due date until the date of payment, and also establishes the basis for calculating the interest due:

> (a) **General Rule.** If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.[11]

---

[11] 26 U.S.C. § 6601(a) (2002).

9

In this case, the last date prescribed for payment for the 1985 tax deficiency was April 15, 1986, and the last date prescribed for payment for the 1986 taxes was April 15, 1987. Moreover, section 6601 of the IRC authorizes the IRS to collect interest upon unpaid assessed interest.[12] For all these reasons, the bankruptcy court properly rejected Harker's argument that no interest is due.

Harker then argues that the bankruptcy court should not have reopened the hearing to allow Mr. Hoy to testify as to the amount of interest due. It is within the discretion of the bankruptcy court to determine the manner of presentation of evidence, and there was no abuse of that discretion in reopening the record.[13]

Harker next claims that the IRS incorrectly calculated the interest due on the tax deficiency. Section 6621 of the IRC determines the statutory rate of interest for the underpayment of tax:

(a) **General Rule.**

. . .

(2) Underpayment rate.– The underpayment rate established under this section shall be the sum of–

(A) the Federal short-term rate determined under section (b), plus

---

[12]*Cohn v. United* States, 872 F.2d 533, 533 (2nd Cir. 1989) (holding that the statute is clear on its face and in no manner suggests that the IRS is prohibited from imposing compound interest on taxes accruing after December 31, 1982); United *States v. Glasser*, 287 F.2d 433, 434 (7th Cir. 1961) (recognizing that, while the law does not favor compound interest, such a consideration does not prevail in the face of a statute so authorizing).

[13]*See California Airmotive Corp. v. Bass*, 354 F.2d 453, 455 (9th Cir. 1965) (stating that in a judicial hearing, reasonable discretion must be vested in the officer who guides the course of the proceedings); *In re Grimm*, 168 B.R. 102, 106 (Bankr. E.D. Va. 1994) (holding that a decision to reopen the record is within the sound discretion of the trial court).

(B) 3 percentage points.

(b) Federal short-term rate.– For purposes of this section–

(1) General Rule.– The Secretary shall determine the Federal short-term rate for the first month in each calendar quarter.

(2) Period during which rate applies.--

(A) In general.– Except as provided in subparagraph (B), the Federal short-term rate determined under paragraph (1) for any month shall apply during the first calendar quarter beginning after such month.

. . .

(3) Federal short-term rate.– The Federal short term rate for any month shall be the Federal short-term rate determined by the Secretary in accordance with section 1274(d). Any such rate shall be rounded to the nearest full percent (or, if a multiple of ½ of 1 percent, such rate shall be increased to the next highest full percent).[14]

A table of interest rates as calculated, pursuant to section 6621 of the IRC, is found in the Internal Revenue Bulletin.[15] According to the table, quarterly interest rates from April 15, 1986 until April 30, 2001, (the period during which the IRS calculated the interest due on the tax deficiencies in this case) varied from a high of 12 percent to a low of 6 percent.[16] The

---

[14]26 U.S.C. § 6621(a)(2)and (b) and (3) (2002).

[15]*See* Rev. Rul. 2002-59, 2002-38 I.R.B 557-562, 2002 WL 2001131 (Sept. 23, 2002).

[16]*Id.*

bankruptcy court adopted the testimony and calculations of Mr. Hoy. The bankruptcy court found the accrued interest due on the 1985 tax deficiency of $17,462.58, including collection costs and lien fees, to be $59,356.96 as of April 30, 2001.[17] It found the accrued interest due on the 1986 tax deficiency of $135,622.00 to be $397,099.96 as of April 30, 2001.[18] According to Mr. Hoy's testimony, he calculated the tax deficiency as of the due date. In the case of the 1985 tax deficiency, that due date was April 15, 1986. In the case of the 1986 tax deficiency, that due date was April 15, 1987. He then calculated the accrued interest on both tax deficiencies as of August 22, 1995, the date the IRS calculated interest relative to the Tax Court decision. He then calculated the accrued interest on the 1985 taxes from August 22, 1995, until April 30, 2001, and the accrued interest on the 1986 taxes from September 9, 1996, until April 30, 2001. Those calculations are as follows.

|  | 1985 | 1986 |
|---|---|---|
| Tax Deficiency | $17,080.00 | $135,622.00 |
| Collection costs | 358.58 | |
| Lien fees | 24.00 | |
| Interest thru 8/22/95 | 29,850.06 | 232,253.72 |
| Interest on tax | 10,824.87 (8/22/95-4/30/01) | 65,515.59 (9/9/96-4/30/01) |
| Interest on interest | 18,682.03 (8/22/95-4/30/01) | 99,330.65 (9/9/96-4/30/01) |
| Total liability | $76,819.54[19] | $532,721.96[20] |

---

[17]*Harker v. United States (In re Harker)*, 2002 WL 1058108 *6 (Bankr. S.D. Iowa, April 15, 2002).

[18]*Id.*

[19]Appellant's Ex. D indicates that the total balance due is $76,876.94. The difference between that sum and the sum above is $57.40. The IRS assigned a collection cost in that exact sum to the 1985 tax deficiency. It appears the IRS neglected to include that collection cost in the final calculation.

[20]Appellant's Ex. E.

12

We cannot find that the bankruptcy courts factual findings as to the amount of interest assessed for 1985 and 1986 are clearly erroneous. Mr. Hoy testified that he excluded interest on penalties and penalties from his calculation. He calculated the tax deficiency, the accrued interest, and the interest on that interest, pursuant to statute. He testified that he used the statutory rates of interest. If Harker believed there was error in the statutory calculations, he had an opportunity to so demonstrate at the hearing by calling his own expert witness. He failed to do so.

We find that the bankruptcy court was limited to a determination of the tax liability, pursuant to an order of remand from the district court, and as to that determination we find no error in the bankruptcy court's calculations. We, therefore, affirm the decision of the bankruptcy court.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT