# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 02-6061 EA

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Dale Roper, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Dale Roper, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Dick Barclay, Director, State of | * | |
| Arkansas, Department of Finance | * | |
| and Administration, | * | |
| | * | |
| Defendant-Appellant. | * | |

---

Submitted: April 29, 2003
Filed: June 20, 2003 (Corrected June 23, 2003)

---

Before KRESSEL, Chief Judge, SCHERMER and FEDERMAN, Bankruptcy
Judges

SCHERMER, Bankruptcy Judge

Dick Barclay, Director, State of Arkansas Department of Finance and Administration (the "DFA") appeals from the bankruptcy court[1] order determining that the tax liabilities of Debtor Dale Roper ("Debtor") are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). We have jurisdiction over this appeal from the final order and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

                                    ISSUE

The issue on appeal is whether the bankruptcy court properly determined that the Debtor's tax liability to the DFA does not fall within the ambit of 11 U.S.C. § 523(a)(1)(C) which excludes from discharge debts for taxes with respect to which a debtor made a fraudulent tax return or willfully attempted in any manner to evade or defeat such tax. The DFA did not allege that the Debtor made a fraudulent tax return; rather they alleged willful evasion. We conclude that the bankruptcy court properly determined that the Debtor did not willfully attempt to evade the tax debt and therefore such debt is included in the Debtor's discharge.

                                 BACKGROUND

Prior to 1996, the Debtor was a farmer. In 1996, the Debtor was unable to obtain a crop loan and was forced to liquidate his farming operations. The proceeds of the sale of his farming assets were used to pay secured creditors with liens on the assets sold.

The Debtor timely filed tax returns for 1996 with the Internal Revenue Service and the State of Arkansas, reporting tax liabilities of $39,564 and $6,951,

---

[1]The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

respectively. The Debtor's taxable income included in excess of $100,000 resulting from the farm liquidation. The Debtor was unable to pay the tax liabilities. After receiving payment demands for the tax liabilities, the Debtor contacted counsel to assist him. In 1997, the Debtor, through counsel, entered into installment agreements with the federal and state taxing authorities, agreeing to pay each the sum of $25 per month. The Debtor submitted a Collection Information Statement ("CIS") to each taxing authority in connection with the negotiation of the installment agreements. In his 1997 CIS, he listed the value of his house at $29,000, the value of a 1997 Pontiac Grand Prix at $21,000, and the value of a 1993 Dodge Ram at $20,000.

The Debtor filed all tax returns and paid all taxes due for subsequent years, and made all payments due under the installment agreements covering the 1996 taxes. His taxable income was as follows: $28,898 in 1997, $46,818 in 1998, $45,291 in 1999, and $51,820 in 2000.[2] He also continued to file all requested Collection Information Statements with the taxing authorities. On his 2000 CIS, the Debtor listed the value of his house at $30,000, the value of the 1997 Pontiac Grand Prix at $6,000, and the value of the 1993 Dodge Ram at $3,000.

In 1998, the Debtor and his wife began depositing all paychecks into the wife's sole account. The wife made all payments for household expenses from her account. Expenses paid included mortgage payments and car payments. By the time of trial, the home mortgage had been paid in full.

In 2000, the Debtor, through counsel, submitted an offer in compromise to the Internal Revenue Service seeking to satisfy the 1996 federal tax liability for the sum of $1,500. The Internal Revenue Service rejected the offer. In 2001, the Debtor decided to seek bankruptcy protection. He reached his decision after discussions with

---

[2] The Debtor's income increased when he got a raise and fluctuated depending on overtime worked.

3

his counsel regarding the tax liabilities and the uncertainties created by the pending bankruptcy legislation.

On February 2, 2001, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. In his schedules he listed two secured creditors, each with two separate secured claims: his attorneys and Regions Bank. His secured claims totaled $18,133. He listed three unsecured creditors: the Internal Revenue Service for $57,000, the State of Arkansas for $9,545, and the issuer of a credit card for $3,387.12, for total unsecured debt of $69,932.12. He listed his home and the eight acres surrounding it valued at $30,000 and personal property valued at $12,125, including the 1997 Pontiac Grand Prix at $6,000, and the 1993 Dodge Ram at $2,500. He listed no cash and no interests in any bank accounts.

The Debtor subsequently obtained an informal appraisal valuing his home and the five acres it occupies in rural Arkansas at between $40,000 and $60,000. The Debtor owns an additional three acres of swampland across the street from his residence which is unusable and of no additional value. On July 31, 2001, the Debtor amended his schedules to value the real property at $40,000 and to list the Internal Revenue Service debt as secured rather than unsecured.

The Debtor commenced an adversary proceeding seeking a determination that his 1996 tax liability to the DFA was not excepted from discharge.[3] The bankruptcy court found that the DFA had failed to establish by a preponderance of the evidence that the Debtor had willfully attempted to evade the tax liability. The DFA appeals that finding.

---

[3] The Debtor also sought a determination that the DFA's tax lien was void. The bankruptcy court concluded that the DFA had no valid lien because it filed it's lien in the wrong county. The DFA does not appeal the portion of the judgment voiding its lien.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Harker v. United States (In re Harker)*, 286 B.R. 84, 89 (B.A.P. 8th Cir. 2002); *Ketchum v. United States (In re Ketchum)*, 177 B.R. 628, 629 (E.D. Mo. 1995).

## DISCUSSION

Pursuant to 11 U.S.C. § 523(a)(1)(C), a discharge does not discharge an individual from a tax debt with respect to which the debtor willfully attempted in any manner to evade or defeat such tax. In order to be excepted from discharge, the taxing authority must establish by a preponderance of the evidence that the taxes are nondischargeable. *May v. Missouri Department of Revenue (In re May)*, 251 B.R. 714, 717 (B.A.P. 8th Cir. 2000). The exception to discharge in 11 U.S.C. § 523(a)(1)(C) includes a conduct element and an intent element. *Id*. at 718. If a debtor is aware of the duty to pay taxes, has the wherewithal to pay the taxes, and takes steps to avoid paying them, the debtor has willfully attempted to evade or defeat the tax. Factors indicating an intent to evade tax obligations include understatements of income, failure to file tax returns, implausible or inconsistent behavior by the taxpayer, failure to cooperate with the taxing authority, concealment of assets, dealing in cash, shielding income, and otherwise frustrating collection efforts. *Id*. Conduct aimed at concealing assets constitutes a willful attempt to evade or defeat taxes. *Id*.

Here there is no dispute that the Debtor was aware of his duty to pay taxes. He timely filed all tax returns and paid all taxes except for the 1996 liabilities which resulted from the sale of the farming assets. Furthermore, the Debtor did not take steps to avoid paying taxes. Rather, he contacted the DFA and negotiated an installment repayment plan. He made all payments due under the installment plan

5

through the date of his bankruptcy filing. He continued to file all tax returns, pay all subsequent taxes, and provide updated Collection Information Statements as requested.

Admittedly the Debtor stopped maintaining a bank account in his name after 1998 and delivered his paychecks to his wife for her to deposit in her account and to use to pay household expenses. After 1996, the Debtor and his wife continued to pay other creditors, including the home mortgage, which has since been completely satisfied, and the car loans, which have been reduced. These payments were not made with an intent to evade payment of the 1996 tax liability; rather they were made with the intent of keeping the house and the vehicles so the Debtor and his family would have a place to live and would have a means of transportation. The home and vehicles do not reflect an extravagant lifestyle on the part of the Debtor and his family.

The DFA argues that inconsistencies in the Debtor's valuation of assets on the various Collection Information Statements and the bankruptcy schedules reflect an intent to conceal assets and evade the taxes. The bankruptcy court disagreed. The bankruptcy court found credible the Debtor's testimony that he valued his house and vehicles on the 1997 CIS at their respective purchase prices. In the 2000 CIS, he increased the home value by $1,000 and decreased the values of the vehicles because of possible appreciation of the home and depreciation of the vehicles. The 2000 CIS is essentially consistent with the February 2001 bankruptcy schedules. The Debtor did not have his house appraised until after filing bankruptcy when he obtained an unofficial appraisal. He promptly amended his schedules to increase the home value by $10,000 after obtaining the appraisal. If any criticism can be made of the Debtor's disclosures, the Debtor overstated the values of his vehicles on the initial CIS he supplied in 1997. This is clearly not evidence of an intent to conceal assets.

6

The DFA also argues that the Debtor employed professionals, attorneys and accountants, to file and prepare tax returns, to negotiate a resolution with respect to the 1996 tax liabilities, and ultimately to file bankruptcy. Relying on the expertise of professionals to deal with difficult financial issues is not evidence of an intent to evade taxes; nor is the Debtor's exercise of his rights under the Bankruptcy Code. If we were to conclude that filing a bankruptcy petition is a willful attempt to evade taxes then all tax liabilities would fall within the ambit of 11 U.S.C. § 523(a)(1)(C). This is inconsistent with the congressional intent that exceptions to discharge are to be construed narrowly against the creditor and liberally in favor of the debtor to effectuate the fresh start policy of the Bankruptcy Code. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).[4] Furthermore, the facts that the Debtor's non-tax liabilities were minimal ($3,387.12 in credit card debt and approximately $18,000 in total secured debt) and that he reaffirmed the secured debt do not transform his bankruptcy filing into evidence of an intent to willfully evade his 1996 tax liability. Rather, the Debtor was suffering under the burden of almost $70,000 in tax liabilities, which amount continued to increase despite his regular payments under the installment agreements. Bankruptcy was an available option to get out from under the growing mountain of debt associated with the 1996 tax liabilities.

The DFA makes much of the phrase "in any manner" contained in 11 U.S.C. § 523(a)(1)(C). The DFA argues that the phrase merely requires it to demonstrate any evidence which could be tend to demonstrate evasive behavior. In the *May* decision, this court articulated a list of factors to be considered when evaluating whether a

---

[4] The *Van Horne* court also concluded that the appropriate burden of proof under 11 U.S.C. § 523 was the clear and convincing standard. That holding was abrogated by *Grogan v. Garner*, 498 U.S. 279, 11 S.Ct. 654, 112 L.Ed.2d 755 (1991). The *Van Horne* court's observation regarding congressional intent remains valid today and has been cited since the *Grogan* opinion. *See, e.g.*, *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994).

debtor had the intent to evade taxes. Under the DFA's argument, if a taxing authority can demonstrate a single factor from that list, it has established the intent to evade and therefore the tax should be excepted from discharge. The *May* factors are to be considered in light of the entire record. No factor should be considered in isolation as evidence of intent to evade. This interpretation is consistent with the burden of proof borne by the DFA. It must establish that the debt is nondischargeable by a preponderance of the evidence, not by a single piece of evidence.

With respect to the Debtor's ability to pay the taxes, the DFA argues that the mere fact that the Debtor had income in 1996 implies he had the ability to pay his income tax liability. This argument ignores the reality of the situation. The bulk of the Debtor's income in 1996 resulted from the sale of collateral, the proceeds of which went to secured creditors, not to the Debtor. While such proceeds may constitute taxable income for the Debtor, they were not available for the Debtor to use to pay the tax liability.

The bankruptcy court properly found that the Debtor did not exhibit the requisite conduct nor have the intent to wilfully evade his taxes and properly concluded that the taxes should not be excepted from discharge. Accordingly, the bankruptcy court's order and judgment should be affirmed.

CONCLUSION

The bankruptcy court properly weighed the evidence as a whole and concluded that the DFA failed to meet its burden of establishing an intent to evade or defeat taxes on the part of the Debtor. The Debtor's indebtedness to the DFA should not be excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). Accordingly, we AFFIRM.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT